UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | |
|---|---|
| CENTER FOR A SUSTAINABLE COAST; and KAREN GRAINEY, | * * * |
| Plaintiffs, | * * |
| v. | * Case 2:19-cv-58-LGW-BWC |
| | * |
| NATIONAL PARK SERVICE, U.S. Department of the Interior; and GARY INGRAM, in his official capacity as Superintendent, Cumberland Island National Seashore, | * * * * * |
| Defendants. | * * |

**PLAINTIFFS' POST-HEARING MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS**

**I.     Property Clause, Supremacy Clause and Preemption**

The Property Clause and Supremacy Clause of the U.S. Constitution preempt the State of Georgia from authorizing a dock within the Cumberland Island National Seashore because such authorization stands in obstacle to the Cumberland Island National Seashore enabling act ("the seashore shall be permanently preserved in its primitive state") 16 U.S.C. § 459i-5(b).

The Property Clause, "in broad terms, gives Congress the power to determine what are 'needful' rules 'respecting' the public lands. *Kleppe v. New Mexico*, 426 U.S. 529, 539 (1976) (citations omitted). The Supreme Court has "repeatedly observed that '(t)he power over the public land thus entrusted to Congress is without limitations.'" *Id.* (citations omitted). The Property Clause "permits 'an exercise of the complete power which Congress has over particular public property entrusted to it.'" *Id.* at 540 (citations omitted).

1

"Congress can acquire exclusive or partial jurisdiction over lands within a State by the State's consent or cession." *Id.* at 542. But "the presence or absence of such jurisdiction has nothing to do with Congress' powers under the Property Clause." *Id.* at 542-43. "Absent consent or cession a State undoubtedly retains jurisdiction over federal lands within its territory, but Congress equally surely retains the power to enact legislation respecting those lands pursuant the Property Clause. And when Congress so acts, the federal legislation necessarily overrides conflicting state laws under the Supremacy Clause." *Id.* at 543 citing U.S. Const. art. VI, cl. 2 and Hunt v. United States, 278 U.S., 96, 100 (1928) (other citations omitted).

In *Kleppe*, the Court concluded that a "different rule would place the public domain of the United States completely at the mercy of state legislation." *Id.* at 543 (citation omitted).

Because Congress enacted the Cumberland Island National Seashore enabling act pursuant to the Property Clause, the federal legislation necessarily overrides conflicting state laws under the Supremacy Clause. *Kleppe*, 426 U.S. at 540. So, to the extent Georgia law is interpreted as entitling the State to authorize construction of a dock within the National Seashore over the Park Service's objection, it is inconsistent with the enabling act and the Park Service's regulations. Necessarily, then, the State law "must recede." *Kleppe*, 426 U.S. at 543. Permitting Georgia the right to authorize construction in the Seashore over NPS objection would contravene Congress' purposes in passing the Cumberland Island National Seashore enabling act, i.e., to permanently preserve the Seashore in its primitive state.

The Park Service has authority under the Property Clause to regulate private property and State-owned property when the use of those properties may affect National Parks and Seashores. Here, the coastal marshlands at issue are owned by the State of Georgia and are

2

within the Cumberland Island National Seashore. In *High Point, LLLP v. U.S. Nat. Park Serv.*, High Point contended the Park Service could not object to construction in land not owned by the federal government. *High Point, LLLP v. U.S. Nat. Park Serv.*, No. CV 212-095, 2015 WL 858150, at *3 (S.D. Ga. Feb. 27, 2015), *aff'd sub nom. High Point, LLLP v. Nat'l Park Serv.*, 850 F.3d 1185 (11th Cir. 2017). In response, the Park Service did not concede whether the State owned the marshlands and tidelands. But "the Park Service stated that, even if the State owned the marshlands and tidelands, the Park Service would still have regulatory authority and would ***still be required to deny the permit***." *Id*. at * 9 (emphasis added).

The statute at issue in *High Point, LLLP* was the Wilderness Act, but the Congressional mandate that the Cumberland Island National Seashore "shall be permanently preserved in its primitive state" also imposed an affirmative obligation to deny permission for construction of a private dock within the Seashore.

This Court agreed with the Park Service's assertion as to the scope of the federal government's authority: "Congress, pursuant to the Property Clause of the United States Constitution, has authority to regulate conduct over nonfederal land encompassed within the boundaries of a national park in order to protect federal property." *Id*. at * 10 *citing United States v. Brown*, 552 F.2d 817, 822 (8th Cir. 1977) and *Kleppe v. New Mexico,* 426 U.S. 529, 538–41 (1976).

The Eleventh Circuit Court of Appeals affirmed: "In addition to the Park Service's general regulatory authority, the Seashore Act gives the Park Service regulatory authority over non-federally owned lands within the bounds of the Cumberland Island National Seashore. In establishing the Cumberland Island National Seashore, the Seashore Act placed the marshlands

within the boundaries of the federal park." *High Point, LLLP v. Nat'l Park Serv.*, 850 F.3d 1185, 1199 (11th Cir. 2017).

Federal law preempts "state law that 'under the circumstances of the particular case ... stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Geier v. American Honda Motor Company, Inc.*, 529 U.S. 861, 873 (2000) *citing Hines v. Davidowitz,* 312 U.S. 52, 67 (1941); *Wiersum v. U.S. Bank, N.A.*, 785 F.3d 483, 486 (11th Cir. 2015).

Allowing Georgia to approve a dock in the Cumberland Island National Seashore over the Park Service's objection would stand as an obstacle to the plain and unambiguous text of the Seashore Act ("the seashore shall be permanently preserved in its primitive state").

This shows that the Park Service's notification of no-objection to the dock was final agency action satisfying the second prong of *Bennett v. Spear* (an act by which "'rights or obligations have been determined,' or from which 'legal consequences will flow.'" 520 U.S. 154, 177-178 (1997). The legal consequence was that the Park Service allowed Georgia Coastal Resources Division to approve construction of a dock in the Seashore when an objection from the Park Service would have preempted such authorization.

**II.     Additional Circumstances Showing the NPS Notification Was Final Agency Action**

NPS has the authority, and an affirmative obligation, to protect Cumberland Island's natural and cultural resources. In addition to not complying with the agency's obligation to prevent the State of Georgia from authorizing the dock, the Park Service effectively informed Lumar, LLC that it would not take an enforcement action by stating in writing that it did not

4

object to construction of the dock. And in fact, NPS has taken no further action pertaining to the dock.

In *United States v. Jenkins*, Mr. Jenkins retained rights to reside in a house on Cumberland Island. The Park Superintendent observed him constructing an addition to the house, after which Mr. Jenkins requested permission to construct the addition. The Superintendent replied with a letter that stated, "[y]our request to expand your residence on Cumberland Island is approved in accordance with your retained rights." *United States v. Jenkins*, 714 F. Supp. 2d 1213, 1224 (S.D. Ga. 2008). The Park Service subsequently wrote a second letter instructing Mr. Jenkins to stop construction on the addition. After noticing that Mr. Jenkins was installing a septic system, the Park Service also instructed him to stop that work. Mr. Jenkins refused, and the Park Service issued a citation and sued for nuisance and trespass. *Id*. at 1218.

In weighing the factors for whether to issue a preliminary injunction, this Court found that Mr. Jenkins "could reasonably have relied on Superintendent Brumbelow's letter permitting him to proceed with construction." *Id*. at 1224. In that case, the Superintendent's letter was not the consummation of the agency's decision-making process. But if it had been, it would have been an act by which rights would have been determined and from which legal consequences would have flowed. *Bennett v. Spear*, 520 U.S. at 177-178.

Even if the notification of no-objection in this case cannot ultimately convey a right to maintain the dock in violation of the Seashore Act, the letter informed Lumar, LLC that, in the

absence of further decision-making by the agency, the Park Service would not take an enforcement action to stop construction. This was final agency action under *Bennett v. Spear*.

The Park Service's testimony in *Jenkins* also supports Plaintiffs' substantive claim against the Park Service in this case for violating the Seashore Act. Art Frederick was a past Superintendent of Cumberland Island and was NPS Deputy Regional Director for the Southeastern Region during the *Jenkins* case. He testified, "All the resources on Cumberland Island should be protected if we're going to maintain the park in a primitive state. And we have to be mindful of protecting those resources."  1218-19.

The Administrative Procedure Act ("APA") provides for review of "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. The APA defines "agency action' as including the whole or a part of an agency rule, order, license, sanction, or relief." 5 U.S.C. § 551(13). "Relief" is defined as including the whole or a part of an agency— "grant of … authority, or, privilege;" or "taking of other action on the application of and beneficial to a person." 5 U.S.C. § 551(11).

The Park Service's notification of no objection meets this definition of agency action, and the agency doesn't argue otherwise. Two conditions must be satisfied for agency action to be 'final': First, the action must mark the consummation' of the agency's decision-making process, -- it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which "rights or obligations have been determined," or from which "legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177-178 (1997).

The Park Service's reliance on *Flue-Cured Tobacco Coop. Stabilization Corp. v. U.S.E.P.A.* is not applicable in this case because "Section 404 of the Radon Act explicitly prohibits the Report from having any regulatory effect." *Flue-Cured Tobacco Coop. Stabilization Corp. v. U.S.E.P.A.*, 313 F.3d 852, 858, 862 (4th Cir. 2002).

In *Franklin v. Massachusetts*, the decennial census was "a moving target, even after the Secretary reports to the President." *Franklin v. Massachusetts*, 505 U.S. 788, 797, (1992). In *Dalton v. Specter,* the President "had absolute discretion to accept or reject" the base closure recommendations. *Dalton v. Specter,* 511 U.S. 462, 469–471 (1994). The "reports in *Franklin* and *Dalton* … were purely advisory and in no way affected the legal rights of the relevant actors." *Bennett v. Spear,* 520 U.S. at 178. As set forth above, these cases are distinguishable from the Park Service's notification of no-objection, which affected legal rights.

Plaintiffs have set forth why the Park Service's notification of no-objection was more than a merely persuasive decision with no legal consequences. But in answer to this Court's question as to whether agency action that may be persuasive but not binding can be final agency action, Plaintiffs respectfully show that *Cascadia Wildlands Project v. U.S. Fish & Wildlife Serv.*, 219 F. Supp. 2d 1142 (D. Or. 2002) and *Friends of Crystal River v. U.S. E.P.A.*, 794 F. Supp. 674 (W.D. Mich. 1992), *aff'd,* 35 F.3d 1073 (6th Cir. 1994) support such a position.

In *Cascadia Wildlands Project v. U.S. Fish & Wildlife Serv*., the Fish & Wildlife Service pointed out "that its opinion of no jeopardy 'maybe persuasive factual support regarding the propriety of the action agency's decision' if there is an unanticipated take which results in a claim against the Forest Service." Cascadia Wildlands Project v. U.S. Fish & Wildlife Serv., 219 F.

7

Supp. 2d 1142, 1148 (D. Or. 2002). The court held that the "ability of the Forest Service to use the 'no jeopardy' conclusion … in defense of its actions in a future proceeding is an appreciable legal consequence." *Cascadia Wildlands Project v. U.S. Fish & Wildlife Serv.*, 219 F. Supp. 2d 1142, 1148 (D. Or. 2002). Similarly, the ability of Lumar, LLC to use the Park Service's notification of no-objection in obtaining a Letter of Authorization from Georgia Coastal Resources Division and a Letter of Permission from the Corps was "an appreciable legal consequence."

In *Friends of Crystal River v. U.S. E.P.A.*, the U.S. Environmental Protection Agency ("EPA") decided to withdraw its objection to the State issuing a permit. Even though EPA's objection was not binding on the State, the court found "no support" for construing EPA's decision "as anything other than final agency action." *Friends of Crystal River v. U.S. E.P.A.*, 794 F. Supp. 674, 688 (W.D. Mich. 1992), *aff'd,* 35 F.3d 1073 (6th Cir. 1994).

### III.    Standing – Causation

A causal connection for standing is less than proximate causation. *Barbour v. Haley*, 471 F.3d 1222, 1226 (11th Cir. 2006) (citation omitted). An indirect injury is sufficient as long as it "is indeed fairly traceable to the defendant's acts." *Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 260–61 (1977).

Plaintiffs plausibly alleged that the Park Service's notification of no-objection led to Lumar, LLC receiving authorization to construct the dock. That is sufficient under the Plaintiffs' "relatively modest" burden of proof at this stage. *Bennett,* 520 U.S. at 170-171.

**IV.     Standing – Redressability**

A plaintiff must show that its harm is redressable by a favorable court ruling. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). The Supreme Court has specified that redress must be "likely, as opposed to merely speculative." *Friends of the Earth, Inc. v. Laidlaw Envtl. Srvs. (TOC), Inc.*, 528 U.S. 167, 181, 187 (2000); *Lujan*, 504 U.S. at 561.

In *Utah v. Evans*, 536 U.S. 452, 464 (2002), the Census Bureau filled in gaps in its information by inferring that characteristics about missing addresses were the same as those of certain neighbors. The State of Utah received one less Representative in Congress and filed suit challenging the census methodology. The Supreme Court held that Utah had standing because "the courts would have ordered a change in a legal status (that of the 'report'), and the practical consequence of that change would amount to a significant increase in the likelihood that the plaintiff would obtain relief that directly redresses the injury suffered."

The Court specified that it had found standing in similar circumstances, citing *Federal Election Comm'n v. Akins,* 524 U.S. 11, 25 (1998) ("standing to obtain court determination that the organization was a 'political committee' where that determination would make agency more likely to require reporting, despite agency's power not to order reporting regardless.").

**V.     Conclusion**

For the reasons set forth above and in *Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss*, the Park Service's notification of no-objection was final agency action which Plaintiffs have standing to challenge in this Court.

9

Respectfully submitted December 26, 2019.

/s/ Jon L. Schwartz

Jon L. Schwartz
Ga. Bar. No. 631038
*Attorney for Plaintiffs Center for a Sustainable Coast and Karen Grainey*

**Jon L. Schwartz, Attorney at Law, P.C.**
1170 Peachtree St., N.E., Suite 1200
Atlanta, GA 30309
404-667-3047
jon@jonschwartz.net

**CERTIFICATE OF SERVICE**

I certify that I have this December 26, 2019, served the foregoing *Post-Hearing Memorandum* upon all counsel of record by way of the Court's electronic case filing (ECF) system.


/s/ Jon L. Schwartz

Jon L. Schwartz
Ga. Bar. No. 631038
Attorney for Plaintiffs

**Jon L. Schwartz, Attorney at Law, P.C.**
1170 Peachtree St., N.E., Suite 1200
Atlanta, GA 30309
404-667-3047
jon@jonschwartz.net