IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | |
|---|---|
| CENTER FOR A SUSTAINABLE COAST; and KAREN GRAINEY, <br> Plaintiffs, | ) <br> ) <br> ) <br> ) |
| v. | )    Case No. 2:19-cv-58 <br> ) <br> ) |
| NATIONAL PARK SERVICE, U.S. DEPARTMENT OF THE INTERIOR; and GARY INGRAM, IN HIS OFFICIAL CAPACITY AS SUPERINTENDENT, CUMBERLAND ISLAND NATIONAL SEASHORE, <br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO FILE AMENDED COMPLAINT[1]

More than five months after the National Park Service and Gary Ingram (collectively, NPS) filed its motion to dismiss, Plaintiffs, the Center for a Sustainable Coast and Karen Grainey (collectively, the Sustainable Coast) seek leave to amend in order to file an amended complaint to avoid dismissal. But both of the Sustainable Coast's proposed amended complaints are futile against NPS because they contain the same defects as the Sustainable Coast's initial complaint. That is, under both proposed amended complaints, the Sustainable Coast's harm is redressable if, and only if, Sustainable Coast succeeds in a separate state court action against Lumar,

---

[1] The United States Army Corps of Engineers' (the Corps) appearance at this time is limited to jurisdictional purposes.  Should the Court grant the Sustainable Coast's motion to amend its Complaint to include any claims against the Corps, once the Complaint is docketed, the Sustainable Coast must perfect service of process in accordance with the Federal Rules of Civil Procedure.

LLC. Likewise, neither proposed amended complaint challenges NPS final agency action sufficient to confer subject matter jurisdiction. For both of these reasons, the Court should deny the Sustainable Coast's motion to amend its complaint against NPS. Should the Sustainable Coast choose to pursue a claim against the Corps, it should do so in a separate action.

## BACKGROUND AND PROCEDURAL HISTORY

The Sustainable Coast filed this lawsuit against NPS on May 3, 2019. *See* Doc. No. 1.[2] In its initial complaint, the Sustainable Coast alleged that NPS violated the Cumberland Island National Seashore Act by not objecting to Lumar's request to the Georgia Coastal Resources Division of the Department of Natural Resources (GCRD) to build a dock on its property. *See* Doc. No. 1, ¶¶ 15-21. In particular, the Sustainable Coast alleged that Cumberland Island National Seashore Superintendent Gary Ingram signed a form statement on behalf of NPS that provided "[a]s an adjacent property owner, I have been informed of the intended construction and reviewed the plans and I do not have any objections to the project as proposed." *Id.* ¶ 19. This was not the final step in the GCRD approval process. At some point after receiving NPS's form, GCRD issued Lumar a Letter of Authorization and provided the Corps a notice of concurrence and no objection to the Corps' proposal to issue a Letter of Permission to build the dock. *Id.* ¶ 21. Thereafter, Lumar built the dock. *Id.* ¶ 23.

---

[2] The background of the Sustainable Coast's initial complaint is recounted in detail in NPS's motion to dismiss. *See* Doc. No. 9. NPS incorporates its previous briefing in support of its motion to dismiss into this document. *See* Doc. Nos. 9 & 18.

In its initial prayer for relief, the Sustainable Coast requested this Court order NPS to "set aside" its form. *See* Doc. No. 1, Prayer for Relief. The Sustainable Coast, however, did not ask the Court to order NPS to force Lumar to remove the dock. Rather, the Sustainable Coast filed a separate lawsuit in Fulton County Superior Court against Lumar alleging a violation of the Georgia Coastal Marshlands Protection Act. *Id.* ¶ 23. The Sustainable Coast told this Court that if it prevailed in Fulton County, Lumar would have to seek another GCRD dock permit. *Id.* ¶ 25. It further claimed that an order from this Court setting aside NPS's form would potentially influence GCRD's decision on Lumar's future dock request. This multi-forum litigation strategy hit a snag, however, when the Fulton County lawsuit was dismissed. *See* Doc. No. 18-1.

On July 12, 2019, NPS moved to dismiss the Sustainable Coast's complaint for lack of subject-matter jurisdiction for two reasons. *See* Doc. No. 9. First, NPS argued that it had not waived its sovereign immunity. Second, NPS argued that the Sustainable Coast lacked standing because the relief it sought (i.e., no dock) was dependent on the decisions of third parties not before this Court. After the matter was fully briefed, the Court heard oral argument on December 16, 2019. Ten days after oral argument, and more than five months after NPS filed its motion to dismiss, the Sustainable Coast filed a motion to amend its complaint against NPS in which it also sought to add the Corps to the lawsuit. *See* Doc. No. 24. For some reason, the

Sustainable Coast attached two proposed amended complaints as exhibits to its motion. *See* Doc. Nos. 24-1, 24-2.[3]

Aside from slight variations, the Sustainable Coast's theory of liability against NPS is the same under the initial complaint as it is in the second proposed amended complaint. *Compare* Doc. No. 1, *with* Doc. No. 24-2. That is, as in the Sustainable Coast's initial complaint, the Sustainable Coast still challenges NPS's completion of a form stating that it did not object to Lumar's request to build a dock. *See* Doc. No. 24-2, ¶¶ 24-25. Likewise, in the second proposed amended complaint, the Sustainable Coast still alleges that GCRD relied on the no objection form in approving Lumar's permit request, *id.* ¶ 28, and that the Corps, in turn, relied on GCRD's notice of concurrence in approving Lumar's permit request. *Id.* ¶ 29. Finally, the Sustainable Coast claims the same injury as it did in the initial complaint—that its use and enjoyment of Cumberland Island was adversely impacted by the private dock. *Id.* ¶ 5. To remove the dock and remedy this alleged injury, the Sustainable Coast still has to prevail in the Fulton County lawsuit (*id.* ¶¶ 43-44)—a feat that is highly unlikely given that the lawsuit it filed against Lumar was dismissed with prejudice at the trial court for several reasons. *See* Doc. No. 18-1.

The second proposed amended complaint is admittedly not identical to the Sustainable Coast's initial complaint. But as explained below, none of its new allegations fix the problems in the Sustainable Coast's initial complaint. Indeed, the

---

[3] Because the allegations against NPS are substantially similar in both proposed amended complaints, and the Sustainable Coast's primary request is that it be allowed to file the second proposed amended complaint, NPS will focus its arguments in this brief to establishing that the second proposed amended complaint is futile against NPS.

4

majority of the new allegations are aimed solely at fleshing out the Sustainable Coast's arguments in the Fulton County suit in an effort to convince this Court that it will prevail in the Fulton County action. *See* Doc. No. 24-2, ¶¶ 30-42. But these, and the other, additional allegations discussed below are not sufficient to confer subject-matter jurisdiction over NPS.

## STANDARD OF REVIEW

The Court should deny the Sustainable Coast's belated efforts to amend its complaint because both of the proposed amended complaints the Sustainable Coast attaches to its motion would be futile against NPS. In deciding a motion to amend, a district court considers whether: 1) the amendment would be prejudicial to the opposing party; 2) there has been bad faith or undue delay on the part of the moving party; or 3) the amendment would be futile. *McKinley v. Kaplan*, 177 F.3d 1253, 1258 (11th Cir. 2004). An amendment is futile if the cause of action asserted could not withstand a motion to dismiss. *Florida Power & Light Co. v. Allis Chalmers Corp.*, 85 F.3d 1514, 1520 (11th Cir. 1996). Thus, the Eleventh Circuit has explained in this context "[a] proposed amendment may be denied for futility when the complaint as amended would still be properly dismissed." *Coventry First, LLC v. McCarty*, 605 F.3d 865, 870 (11th Cir. 2010). In performing this analysis, the court analyzes the proposed amendment under the same standard as would be applied to a motion to dismiss. *Oltmanns v. Int'l Longshoremen's Ass'n Local 1475, Clerks & Checkers Union*, 4:18-cv-188, 2019 U.S. Dist. LEXIS 112768, at *8 (S.D. Ga. July 8, 2019).

Here, the Sustainable Coast's second proposed amended complaint is futile against NPS because the Court lacks subject-matter jurisdiction over the only NPS claim (Count I). The Sustainable Coast bears the burden of establishing subject-matter jurisdiction. *OSI, Inc. v. United States*, 285 F.3d 947, 951 (11th Cir. 2002). Dismissal is proper if subject-matter jurisdiction is lacking. *Stalley ex rel. United States v. Orlando Reg'l Healthcare Sys.*, 524 F.3d 1229, 1232 (11th Cir. 2008).

A Rule 12(b)(1) challenge comes in two forms: facial or factual. *McElmurray v. Consol. Gov't of Augusta–Richmond Cty.*, 501 F.3d 1244, 1251 (11th Cir. 2007). On a facial attack, review is limited to the face of the complaint. *Id.* Factual attacks, on the other hand, permit consideration of matters outside of the pleadings. *Id.* NPS asserts a facial attack.

## ARGUMENT

This Court lacks subject-matter jurisdiction over the second proposed amended complaint's claim against NPS for the same two reasons jurisdiction was lacking under the initial complaint. First, the Sustainable Coast lacks standing because the relief it seeks (no dock) is *still* dependent on the decisions of third parties not before this Court. Second, the United States has not waived its sovereign immunity for the claim set forth against NPS. Both reasons independently warrant dismissal and make the second proposed amended complaint futile against NPS.

## I.   The Sustainable Coast Lacks Article III Standing Against NPS.

As the party invoking jurisdiction, the Sustainable Coast bears the burden of establishing standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).  To

carry this burden, the Sustainable Coast must demonstrate (1) that it suffered an injury in fact, (2) caused by the challenged action of the defendant, and (3) that the injury is redressable by the court. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. at 103. All three factors are missing from the second proposed amended complaint as it relates to NPS.

First, the Sustainable Coast's alleged injury (the presence of a dock) is not redressable by an order from this Court. To establish redressability, the Sustainable Coast must show that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 561. (internal citations and quotations omitted). "The Supreme Court has described redressability as a '*substantial likelihood* that the relief requested will redress the injury claimed.'" *I.L. v. Alabama*, 739 F.3d 1273, 1279 (11th Cir. 2014) (quoting *Duke Power Co. v. Carolina Envtl. Study Grp., Inc.*, 438 U.S. 59, 75 (1978)). The Sustainable Coast cannot meet this showing.

As in the initial complaint, under the second proposed amended complaint, an order from this Court will not necessarily lead to removal of the dock. Rather, to achieve this end, the Sustainable Coast still has to (1) prevail in its dismissed Fulton County action, (2) Lumar has to re-apply for a GCRD permit, and (3) GCRD has to deny Lumar's permit request. This sequence of contingencies is too speculative to confer standing.

The majority of the second proposed amended complaint's new allegations are aimed at fleshing out the Sustainable Coast's arguments in the Fulton County suit

in an effort to convince this Court that it will prevail in that action. *See* Doc. No. 24-2, ¶¶ 30-42. But this misses the mark. The Supreme Court explained in *Whitmore v. Arkansas*, 495 U.S. 149, 159-60 (1990), "[i]t is just not possible for a litigant to prove in advance that the judicial system will lead to any particular result in his case." Thus, standing based on a prediction of what another court *may* do in the future is just too speculative. *See Clapper v. Amnesty Int'l USA,* 568 U.S. 398, 413-14 (2013) ("In the past, we have been reluctant to endorse standing theories that require guesswork as to how independent decisionmakers will exercise their judgment."); *In re Ciprofloxacin Hydrochloride Antirust Litig.*, 261 F. Supp. 2d 188, 200 (E.D.N.Y. 2003) (explaining the Supreme Court has found that a legal theory dependent on predicting the outcome of a specific lawsuit is unduly speculative).

Second, NPS did not cause Sustainable Coast's injury. Other parties did. To establish causation, the "injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Hollywood Mobile Estates Ltd. v. Seminole Tribe of Fla.*, 641 F.3d 1259, 1265 (11th Cir. 2011).[4] NPS neither built, nor authorized the building of, a dock

---

[4] In the initial complaint, the Sustainable Coast alleged that the no-objection letter "increased the likelihood" that GCRD and the Corps would grant Lumar authorization to construct the dock. *See* Doc. No. 1, ¶ 20. The second proposed amended complaint similarly claims that GCRD "relied" on the no-objection letter in approving Lumar's request. Doc. No. 24-2, ¶ 28. The Sustainable Coast, however, makes an additional conclusory allegation in the second proposed amended complaint that the no-objection letter "caused" GCRD and the Corps to grant Lumar authorization to construct the dock. *See* Doc. No. 24-2, ¶ 26. Because this averment is a bald legal conclusion, unaccompanied by factual support, the Court need not accept its truth. *See e.g., Mulvey v. Am. Airlines, Inc.*, No. 18-cv-3119, 2019 U.S. Dist. LEXIS 35824, at *7 (D.D.C. Mar. 6, 2019) (at pleading stage plaintiff must allege facts demonstrating each element of standing). This is especially true given that this allegation is at odds with the Georgia Coastal Marshlands Protection Act and the Corps' permitting procedures.

at Cumberland Island. Third parties, not NPS, thus caused the Sustainable Coast's alleged injury. *See Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41-42 (1976) (Article III "requires that a federal court act only to redress injury that fairly can be traced to the challenged action of the defendant, and not injury that results from the independent action of some third party not before the court.").

Counsel for the Sustainable Coast was asked by the Court at the December 16, 2019 hearing to point to the provision of Georgia's Coastal Marshlands Protection Act (O.C.G.A. § 12-5-286) that *required* GCRD to grant Lumar's permit request when NPS does not object. Counsel was unable to do so. Nor does the Sustainable Coast make such a showing now. This is understandable because nowhere in Georgia's Coastal Marshlands Protection Act does it provide that an adjoining landowner gets to decide whether its neighbor is authorized to build a dock. GCRD considers the public interest in deciding whether to grant a permit.

O.C.G.A § 12-5-286(d) creates an entire regulatory scheme that informs GCRD's decision-making process. While O.C.G.A § 12-5-286(d) provides that the GCRD "may also make inquiry to adjoining landowners to ascertain whether or not there is objection to issuance of a permit," this inquiry is not mandatory. Nor is a neighbor's response to that inquiry binding. In O.C.G.A § 12-5-286(g), the statute lists several enumerated factors the GCRD considers when deciding whether a permit is in the public interest. None of these factors discusses an adjoining neighbor's objection or lack thereof. The same holds true for the Corps. Neither agency was thus

required to grant Lumar's permit request simply because NPS did not affirmatively object. NPS thus did not cause the Sustainable Coast's alleged injuries.

Finally, the Sustainable Coast cannot establish it has suffered an injury in fact. The Sustainable Coast admits Lumar has built a dock on its own private property. The Sustainable Coast pleads no factual basis as to why it is authorized to use and enjoy Lumar's private property, or how the presence of a private dock on private property impacted its enjoyment of Cumberland. For all of these reasons, the Sustainable Coast lacks standing on its claim against NPS.

## II.   The Sustainable Coast Cannot Establish the Requisite Waiver of Sovereign Immunity Against NPS.

Even if the Sustainable Coast could establish standing, the Sustainable Coast cannot maintain an action against the United States unless the United States has unequivocally waived its sovereign immunity. *See United States v. Nordic Vill., Inc.*, 503 U.S. 30, 33 (1992); *United States v. Sherwood*, 312 U.S. 584, 586 (1941) ("The United States, as sovereign, is immune from suit save as it consents to be sued."). The government's consent to be sued must be construed strictly in favor of the sovereign. *Nordic Vill.*, 503 U.S. at 34-35 (quotations omitted). If immunity applies, the Court lacks subject-matter jurisdiction to consider a claim. *Bennett v. United States*, 102 F.3d 486, 488 n.1 (11th Cir. 1996).

### a.  The Cumberland Island National Seashore Enabling Act does not Confer Jurisdiction.

The Cumberland Seashore Enabling Act does not provide a private cause of action or judicial review. *See* Doc. No. 9 at 5-6. The Sustainable Coast therefore

cannot use this statute to state a claim in Count I (against NPS) or Count III (against the Corps). As a result, judicial review is available, if at all, only through the APA's limited waiver of sovereign immunity. *See Southern Forest Watch, Inc. v. Sec'y of the Interior*, 2015 U.S. Dist. LEXIS 40201, at *42 (E.D. Tenn. Mar. 30, 2015) (because NPS organic statute does not provide for judicial review, compliance was evaluated through the APA).

> **b.  The APA does not Provide Subject-Matter Jurisdiction Because the Letter is not Final Agency Action.**

Section 702 of the APA provides a limited waiver of sovereign immunity and confers subject-matter jurisdiction in conjunction with 28 U.S.C. § 1331. *Media Gen. Operations, Inc. v. Herman*, 152 F. Supp. 2d 1368, 1371 (S.D. Ga. 2001). This waiver is limited to "final agency action." *Nat'l Parks Conservation Ass'n v. Norton*, 324 F.3d 1229, 1236 (11th Cir. 2003).  In *Bennett v. Spear,* the Supreme Court set forth a two-part test for determining "final agency action:" "First, the action must mark the consummation of the agency's decisionmaking process—it must not be of a tentative or interlocutory nature. And second, the action must be one by which rights or obligations have been determined, or from 'which legal consequences will flow[.]'" 520 U.S. at 177-78 (1997) (internal citations and quotations omitted). As the party invoking federal jurisdiction, the Sustainable Coast has the "burden of identifying specific federal conduct and explaining how it is 'final agency action' within the meaning" of the APA. *Colorado Farm Bureau Fed'n v. U.S. Forest Serv.*, 220 F.3d 1171, 1173 (10th Cir. 2000).

As was the case with the initial complaint, the form filled out by NPS discussed in the Sustainable Coast's second proposed amended complaint does not constitute final agency action. Specifically, the form does not satisfy the second *Bennett* condition, *i.e.*, that the action be one by which "rights or obligations have been determined, or from which legal consequences will flow." *Bennett*, 520 U.S. at 177-78. As was discussed at the December 16, 2019 hearing, other agencies authorized Lumar's permit request, not NPS. At most, NPS participated in this process; it did not and could not conclude it. Other parties considered and granted Lumar's application to build a dock at Cumberland, not NPS. And these agencies did so by analyzing Lumar's request under their own permitting framework.

The Sustainable Coast's theory of liability is still covered by the Fourth Circuit's decision in *Flue-Cured Tobacco Coop. Stabilization Corp. v. United States EPA*, 313 F.3d 852 (4th Cir. 2002). There, the court found that an EPA report that classified tobacco as a known human carcinogen was not "final agency action" because "the consequences complained of by plaintiffs stem from independent actions by third parties." *Id.* at 860. The plaintiff in *Flue-Cured* lodged the same argument that the Sustainable Coast does here—review was appropriate because the report influenced decisions made by other agencies. The Fourth Circuit rejected this argument because "even when agency action significantly impacts the choices available to the final decisionmaker, this distinction does not transform the challenged action into reviewable action under the APA." *Id.* The same is true here. The form signed/submitted by NPS had no direct legal consequences. Neither GCRD nor the

Corps were obligated to approve Lumar's application based on it. *Id.*; *see also Franklin v. Massachusetts,* 505 U.S. 788, 796-99 (1992) (concluding that a census report authorized by Secretary of Commerce and submitted to President is not a final agency action because "the Secretary's report to the President has no direct effect on reapportionment until the President takes affirmative steps to calculate and transmit the apportionment to Congress"); *Dalton v. Spector*, 511 U.S. 462, 469 (1994) (base closure recommendations were not final agency action because the President was free to approve or disapprove of report); *Parsons v. United States DOJ*, 878 F.3d 162, 167-68 (6th Cir. 2017) (finding no final agency action where report did not "mandate, bind, or limit other government actors.").

The primary case the Sustainable Coast's relies on to rebut this body of case law, *Cascadia Wildlands Project v. United States Fish & Wildlife Services*, 219 F. Supp. 2d 1142, 1148 (D. Ore. 2002), is factually distinguishable and legally unpersuasive. *See* Doc. No. 25 at 8-9. *Cascadia* did not involve an analysis of the persuasive impact one agency's action had on another agency. Rather, it involved a challenge to a biological opinion issued at the conclusion of a formal consultation in accordance with Section 7 of the Endangered Species Act. The *Cascadia* court ultimately held that a non-jeopardy biological opinion without an incidental take statement was also a final agency action. But it added—in *dicta* and without any reasoning—the ability of the action agency to use the biological opinion as evidence in a legal proceeding in the event there was of unanticipated take was an "appreciable legal consequence." *Id.* at 1148. Aside from being factually distinguishable, the

13

*Cascadia* court's cursory reasoning has been criticized for its analysis, *see Sierra Forest Legacy v. United States Forest Serv.*, 598 F. Supp. 2d 1058, 1069 (N.D. Cal. 2009) (disagreeing with the court's analysis in *Cascadia*), and has not been applied in a situation similar to that before the Court here.[5]  Regardless, the analysis set forth by the Fourth Circuit in *Flue-Cured*, the Sixth Circuit in *Parsons*, and the Supreme Court in *Franklin* and *Dalton* are more closely on point to the facts of this case and represent the majority view.[6]

### c.  The Sustainable Coast's Preemption Argument is not Ripe.

The Sustainable Coast also argues that the second *Bennett* condition is satisfied because *had* NPS objected to Lumar's permit request, the Supremacy Clause

---

[5] It is unlikely that *Cascadia* remains good law in the Ninth Circuit in light of *Fairbanks North Star Borough v. U.S. Army Corps of Engineers*, 543 F.3d 586 (9th Cir. 2008). In particular, the argument that agency conduct could be considered "final agency action" because it could be used as evidence in a subsequent legal proceeding was rejected in *Fairbanks*. The *Fairbanks* plaintiff argued that the Corps' approved jurisdictional determination had a legal consequence because it could be used against the plaintiff in a subsequent proceeding for civil penalties for violating the Clean Water Act by preventing the plaintiff from offering a good faith defense. *Id.* at 595. The Ninth Circuit rejected this argument, explaining "the possibility that [the plaintiff] might someday face a greater risk of increased fines [by a court] should it proceed without regard to the Corps' assertion of jurisdiction does not constitute a legal consequence of the approved jurisdictional determination." *Id.* Rather, "any difficulty [the plaintiff] might face in establishing good faith flows not from the legal status of the Corps' determination as agency action, but instead from the practical effect of [the plaintiff] having been placed on notice that construction might require a [CWA] permit." *Id.*

[6] The other case cited by the Sustainable Coast, *Friends of Crystal River v. United States EPA*, 794 F. Supp. 674 (W.D. Mich. 1994), is likewise distinguishable. *See* Doc. No. 25 at 8. There, the EPA transferred the processing of the fill and dredge permit from the State of Michigan to the Corps pursuant to 40 C.F.R. § 223.50(j). *See Friends of Crystal River*, 794 F. Supp. at 679. Moreover, the State of Michigan had "previously received an authorized mandate to issue the permit and ha[d] been working with the EPA merely to receive federal authorization under the CWA." *Id.* at 688. There, the court expressly found that the issue before the court was not the EPA's decision whether to object, but rather, the "agency's procedural transfer of power." *Id.* at 689. This challenge is thus factually inapposite to that before the Court.

14

would have forbidden GCRD from approving the permit request. *See generally* Doc. No. 25. Following this logic, the Sustainable Coast contends in its motion to amend that the "proposed Amended Complaints set forth why an objection by the National Park Service to a dock in the Cumberland Island Seashore would preclude Georgia Coastal Resources Division from authorizing the dock." Doc. No. 24 at 4. The Sustainable Coast once again asks the Court to engage in a hypothetical. Namely, NPS *did not* object to Lumar's GCRD permit request. Nor did GCRD ignore such an objection and grant Lumar's permit request. These events could theoretically happen in the future, but there is no guarantee. Indeed, the Sustainable Coast has not even requested that the Court order NPS to object, just that it order that NPS' non-objection be set aside. Accordingly, the Sustainable Coast's strained preemption argument is not ripe for review.

"A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Tex. v. United States*, 523 U.S. 296, 300 (1998) (internal quotations omitted). "The ripeness doctrine keeps federal courts from deciding cases prematurely and protects them from engaging in speculation or wasting their resources through the review of potential or abstract disputes." *United States v. Rivera*, 613 F.3d 1046, 1050 (11th Cir. 2010) (internal quotations, citations, and alterations omitted).

Unless and until NPS objects to Lumar's future permit request (that is itself speculative) and GCRD ignores this objection and seeks to authorize the dock, the Sustainable Coast's manufactured preemption argument is not ripe for consideration.

*See e.g., Stein v. Soyer*, 97-1317, 1997 U.S. Dist. LEXIS 2482, at * 2-3 (S.D.N.Y. Mar. 7, 1997) (finding that claim that state court's potential transfer of husband's property rights in divorce was preempted by federal Copyright Act was not ripe for decision because state court had not transferred copyrights to wife); *Vullo v. Office of the Comptroller of the Currency*, 17-CV-3574, 2017 U.S. Dist. LEXIS 205259, at * 22, 23 (S.D.N.Y. Dec. 12, 2017) (explaining that "[c]laims are not ripe if they depend on the occurrence of contingent future events that may never occur at all" and explaining that "Plaintiff here cannot point to any regulatory action already taken by the [defendant] that preempts state law" and that "[a]ny allegation of preemption at this point relies on speculation about the [defendant's] future actions").

## CONCLUSION

Because this Court would lack subject-matter jurisdiction over the claim set forth in the Sustainable Coast's proposed second amended complaint against NPS, the Sustainable Coast's motion to amend should be denied for futility.

Dated: February 10, 2020

Respectfully submitted,

BOBBY L. CHRISTINE
UNITED STATES ATTORNEY

*s/ Patrick J. Schwedler*
Patrick J. Schwedler
Assistant United States Attorney
Georgia Bar No. 812312
P.O. Box 8970
Savannah, GA  31412
Telephone:  (912) 652-4422
Fax:  (912) 652-4227
Patrick.schwedler@usdoj.gov

*/s/ Jacqueline M. Leonard*
JACQUELINE M. LEONARD
United States Department of Justice
Environment & Natural Resources Division
Natural Resources Section
P.O. Box 7611
Washington, DC 20044
(202) 305-0493
Jacqueline.leonard@usdoj.gov

**CERTIFICATE OF SERVICE**

This is to certify that I have on this day served all parties in this case in accordance with the notice of electronic filing ("NEF"), which was generated as a result of electronic filing in this Court.

This 10th day of February, 2020.

BOBBY L. CHRISTINE
UNITED STATES ATTORNEY


*s/Patrick J. Schwedler*
Patrick J. Schwedler
Assistant United States Attorney

18