# In the United States District Court
# for the Southern District of Georgia
# Brunswick Division

CENTER FOR A SUSTAINABLE    )
COAST, and                  )
KAREN GRAINEY,              )
                            )
    Plaintiffs,           )
                            )
    v.                    )        2:19-CV-58
                            )
UNITED STATES ARMY CORPS    )
OF ENGINEERS, and           )
COLONEL JOSEPH R. GEARY,    )
in his official capacity as )
District Commander and      )
District Engineer, U.S. Army )
Corps. Of Engineers,        )
Savannah District,          )
                            )
    Defendants.           )

## ORDER

This case involves a dispute over the construction of a private dock on Cumberland Island. Plaintiffs, an environmental group and one of its members, ask the Court to set aside a letter of permission to build a private dock on the Island, arguing that the government's decision to authorize it violated various environmental statutes and the Administrative Procedure Act.

The case is here on one procedural motion and two dispositive ones. Dkt. Nos. 68, 70, 79. On the procedural issue, the Court **GRANTS** Defendants' motion to exclude materials outside the administrative record. Dkt. No. 79. On the underlying dispute,

Plaintiffs' motion for summary judgment, dkt. no. 68, is **DENIED**, and Defendants' cross motion, dkt. no. 70, is **GRANTED**.

BACKGROUND

**A. Factual Background**

Cumberland Island is Georgia's largest and southernmost barrier island, and it is mostly owned by the Federal Government. See High Point, LLLP v. U.S. Nat. Park Serv., No. CV 212-095, 2015 WL 858150, at *1 (S.D. Ga. Feb. 27, 2015), aff'd, 850 F.3d 1185 (11th Cir. 2017). To this day, the Island remains largely undeveloped. Id. No roads connect it to the mainland; the primary means of transportation to the Island is by boat. Id.

That's so because Congress designated the Island as a National Seashore in the early 1970s as part of the "Seashore Act." See 16 U.S.C. § 459i; H.R. Rep. No. 92-1405 (1972). The Seashore Act requires, among other things, that Cumberland Island be "permanently preserved in its primitive state," except for certain public recreational uses (which are spelled out by the statute). Id. § 459i-5.

A little more than twenty-three years ago, a company called Lumar purchased ninety-or-so acres of property on the southwest portion of Cumberland Island, in an area known as "Dungeness Cut." Administrative Record ("AR") 230, 246-250; see also Dkt. No. 53. More recently, in 2015, Lumar asked the Army Corps of Engineers

2

for permission to build a "private single family dock adjacent to [the] property[.]" AR 229–230.

Lumar needed the Corps' permission to build a dock because another piece of federal legislation, the Rivers and Harbors Act of 1899, requires a permit from the Corps to build any structure in, over, or under a "navigable water of the United States." 33 U.S.C. § 403. According to Lumar, this dock was "essential" because it would "serve as the only access to [Lumar's] property from the mainland." Id. Lumar apparently planned to construct a house on the property at some point in the future, making it necessary to get "building materials, equipment, and home furnishings . . . for the future house" onto the island—hence the dock. AR 236.

The Corps and Lumar exchanged a series of emails regarding Lumar's request. After some back-and-forth, Lumar agreed to provide a literary search and reconnaissance survey of a 7.3-acre tract of Lumar's property. In other words, Lumar would provide a report on the environment and building structures in the area. See AR 169, 197–99, 212, 224. The report was prepared by an archaeologist and eventually transmitted to the Corps along with a letter from the National Park Service stating that it, as an adjacent property owner, did not have any objections to the proposed project. AR 145–167; id. 194–195.

The Corps then sought comment from several government agencies and, receiving no objections, put together a "Case Document and Environmental Assessment" for Lumar's dock project. AR 34–47.

Based on the assessment, the Corps issued Lumar's Letter of Permission on April 1, 2016, along with a proposed permit for Lumar to sign and return. AR 11; id. 15–20.  Lumar signed and returned the permit later that month, AR 7, and constructed the dock, dkt. no. 33 at 4–5 (citing dkt. no. 1 ¶ 23).

Plaintiff Center for a Sustainable Coast is an organization whose "mission is to ensure and improve the responsible use, protection, and conservation of Georgia's coastal resources," and Plaintiff Karen Grainey is one of its members (referred to collectively as "Sustainable Coast"). Dkt. No. 68-1 ¶¶ 1, 2. Sustainable Coast claims it did not know about the project until the dock was under construction and that it would have provided comments were it given the opportunity. Id. ¶ 6.

**B. Procedural History**

Sustainable Coast filed this action in May 2019 against the National Park Service and Gary Ingram, the Superintendent of Cumberland National Seashore, alleging a violation of the Seashore Act. Dkt. No. 1. By then, the dock had already been built. Dkt. No. 33 at 4–5 (citing dkt. no. 1 ¶ 23). This Court granted the

Park Service's and Mr. Ingram's motion to dismiss the case for lack of subject matter jurisdiction. Dkt. Nos. 9, 33.

Sustainable Coast later filed two amended complaints, this time naming as defendants the Corps and the Corps' Savannah District Commander and Engineer (for simplicity, Defendants will be referred to collectively as "the Corps"). Dkt. Nos. 36, 48.[1]

In the Second Amended Complaint, the operative pleading, Sustainable Coast alleges the Corps violated the National Environmental Policy Act ("NEPA") and the Seashore Act by allowing Lumar to build the dock. Dkt. No. 48 ¶ 1. Sustainable Coast seeks a declaratory judgment that the Corps' decision to allow the dock was "arbitrary and capricious, an abuse of discretion, and contrary to NEPA and the Seashore Act" and asks the Court to "[s]et aside and vacate the Corps' Letter of Permission," id. ¶ 72. To that end, it also asks for an injunction "to preserve Cumberland Island National Seashore's primitive state."[2]

_____

[1] The second amended complaint originally named then-Colonel Daniel H. Hibner as District Commander and Engineer of the Savannah District for the U.S. Army Corps of Engineers. He has since been succeeded by Colonel Joseph R. Geary, who is automatically substituted as the named party in this case under Rule 25(d). See Fed. R. Civ. P. 25(d).

[2] As a housekeeping matter, Defendants filed the administrative record related to the Letter of Permission it issued to Lumar, along with a declaration certifying the record, in November 2020. See Dkt. Nos. 53, 53-2. The Corps represents that the filed record includes "all documents that were directly or indirectly

During the litigation, Sustainable Coast filed a Motion to Remand the matter to the Agency, or, in the Alternative, to Supplement the Administrative Record with Extra-Record Evidence. Dkt. No. 54. Sustainable Coast eventually conceded that remand was inappropriate but maintained that the administrative record should be supplemented. Dkt. Nos. 57, 61. This Court denied the motion, holding that Sustainable Coast failed to satisfy its "heavy burden" of showing that supplementation of the record was necessary. Dkt. No. 65 at 13.

Both parties moved for summary judgment. See Dkt. Nos. 68, 70. In response to the Corps' motion, Sustainable Coast submitted an amended declaration from Karen Grainey (the individual plaintiff in this case) and a new declaration from Carolyn Rader (another member of Sustainable Coast). See Dkt. Nos. 75, 76. The Corps moved to strike various "extra[-administrative]-record" materials included in these declarations and referenced in Sustainable Coast's summary judgment papers. Dkt. Nos. 79, 85, 87.

While the motions were pending, this Court ordered the parties to file supplemental briefs addressing the following questions:

1. Whether Plaintiffs' claims are (1) moot given the completed construction of the Lumar dock, see dkt. no. 82-1; or (2)

---

considered by the [Corps] for the decision to grant a Letter of Permission for the Lumar Dock." Dkt. No. 53-2 ¶ 5.

redressable by an order from this Court setting aside the Letter of Permission for the Lumar Dock and, for example, ordering the dock be torn down. <u>See</u> 5 U.S.C. § 706(2).

2. Whether the Army Corps of Engineers considered whether constructing the Lumar dock on Cumberland Island would violate the Seashore Act, 16 U.S.C. § 459i-5(b), such that the Corps duly considered whether the proposed dock would "threaten[ ] a violation of Federal . . . law . . . imposed for the protection of the environment," 40 C.F.R. § 1508.27(b)(10) (2016), and therefore cause a "significant environmental effect" precluding the use of a categorical exclusion because of "extraordinary circumstances," 40 C.F.R. § 1508.4 (2016).

3. Whether, if Plaintiffs' injuries remain redressable and the Corps failed to consider whether constructing the Lumar dock would violate the Seashore Act, the Court may or should order remand without vacatur. <u>See</u> <u>Black Warrior Riverkeeper, Inc. v. U.S. Army Corps of Eng'rs</u>, 781 F.3d 1271, 1289-92 (11th Cir. 2015).

Dkt. No. 91. They did so, dkt. nos. 94-95, and the Court takes up the pending motions together.

**LEGAL STANDARD**

The Federal Rules of Civil Procedure say that summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Sierra Club, Inc. v. Leavitt, 488 F.3d 904, 911 (11th Cir. 2007). That standard remains the same even where the parties have filed cross-motions for summary judgment. See Gerling Global Reins. Corp. of Am. v. Gallagher, 267 F.3d 1228, 1233-34 (11th Cir. 2001).

Summary disposition "is particularly appropriate in cases in which the court is asked to review ... a decision of a federal administrative agency." Fla. Fruit & Vegetable Ass'n v. Brock, 771 F.2d 1455, 1459 (11th Cir. 1985) (quotations omitted). The reason for this "lies in the relationship between the summary-judgment standard . . . and the nature of judicial review of administrative decisions." 10B Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2733 (4th ed. 2021 Update). Judicial review, after all, is meant to determine "whether the administrative action is consistent with law—that and no more." Id. (quoting Jaffe, Judicial Control of Administrative Action, 595 (1965)). Thus, "in most cases, the court takes the facts as found by the agency and simply applies the law to them so that there often is no need for a trial"—or construing facts. Id.; see also,

e.g., <u>Malladi v. Brown</u>, 987 F. Supp. 893, 922 (M.D. Ala. 1997), <u>aff'd sub nom.</u> <u>United States v. Ponder</u>, 150 F.3d 1197 (11th Cir. 1998).

**DISCUSSION**

I. **The Corps' motion to strike extra-record evidence is granted.**

Courts generally may not consider evidence outside the administrative record in an Administrative Procedure Act ("APA") judicial review case (subject to a few exceptions). <u>Ga. River Network v. U.S. Army Corps of Eng'rs</u>, No. 4:10-cv-267, 2011 WL 2551044, at *1-2 (S.D. Ga. June 27, 2011); <u>Donjon-SMIT, LLC v. Schultz</u>, No. 2:20-cv-011, 2020 WL 1666073, at *6-7 (S.D. Ga. Apr. 3, 2020). Despite the implication of adversarial briefing, though, it appears the parties do not actually disagree about extra-record evidence.

The Corps asks the Court to strike a variety of extra-record materials which Sustainable Coast included in their summary judgment papers. Dkt. No. 79 at 1-2. These include:

- Portions of Karen Grainey's declaration, dkt. no. 75 (and exhibits), including: ¶¶ 4, 10, 11, 16, and 17;

- Portions of Carolyn Rader's Declaration, dkt. no. 76, including: ¶¶ 10, 12;

- References to the extra-record materials in Sustainable

Coast's Statement of Material Facts, dkt. no. 77, including: ¶¶ 52, 57; and

- References to extra record materials in Sustainable Coast's Motion for Summary Judgment, dkt. no. 68.

<u>See</u> Dkt. No. 79 at 1-2.

Sustainable Coast, for its part, does not contend that these materials satisfy any of the exceptions to the administrative-record rule, but it does argue that the materials are admissible for the purpose of establishing standing. Dkt. No. 85 at 2-3. Sustainable Coast even concedes that some of the declaration statements and portions of the SMF are inadmissible, including:

- ¶¶ 4 and 11 of the Grainey declaration, <u>see</u> dkt. no. 75;
- the first paragraph of ¶ 52 of Sustainable Coast's statement of material facts, <u>see</u> dkt. no. 77.

<u>See</u> Dkt. No. 85 at 3-4, 6. And the Corps, in turn, does not object to the extra-record materials being considered for standing purposes—it seeks to strike only "the portions . . . that Plaintiffs use for purposes of the merits." Dkt. No. 87 at 1.

Thus, the parties appear to agree. The disputed materials are admissible for standing purposes but may not be considered for purposes of the underlying APA review. The motion to strike, dkt. no. 79, is therefore **GRANTED**.

**II.    The Corps' cross motion for summary judgment is granted because Sustainable Coast lacks standing.**

Standing goes to the Court's subject matter jurisdiction to hear a case, stemming from Article III's "case or controversy" requirement. Region 8 Forest Serv. Timber Purchasers Council v. Alcock, 993 F.2d 800, 804 (11th Cir. 1993) (citing Allen v. Wright, 468 U.S. 737, 750 (1984), abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. 118 (2014)).    Simply put, courts are "constitutionally bound to *only* entertain arguments that [they] have been given the authority to decide[.]" ACLU of Fla., Inc. v. Dixie Cnty., Fla., 690 F.3d 1244, 1247 (11th Cir. 2012) (emphasis in original).

To have standing, the party invoking federal jurisdiction must satisfy three constitutional requirements. *First,* the plaintiff must show he is "under threat of suffering 'injury in fact' that is concrete and particularized [and] actual and imminent, not conjectural or hypothetical;" *second,* the injury "must be fairly traceable to the challenged action of the defendant;" and *third*, "it must be likely that a favorable judicial decision will prevent or redress the injury." Summers v. Earth Island Inst., 555 U.S. 488, 493 (2009) (citing Friends of Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc., 528 U.S. 167, 180-81 (2000)).

And there are prudential limits on standing, as well. First, "the plaintiff must assert [his] own rights and interests, [he] may not rely on the rights and interests of others[.]" Region 8, 993 F.2d at 805. Next, federal courts should not decide "abstract questions of wide public significance[.]" Id. (quoting Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc., 454 U.S. 464, 475 (1982)). And third, "the plaintiff's complaint must fall within the 'zone of interests' to be protected by the statute in question." Region 8, 993 F.2d at 805 (quoting Valley Forge, 454 U.S. at 474-75). Practically speaking, the upshot of these prudential limits is that "when the plaintiff is not himself the object of the government action or inaction he challenges, standing . . . is ordinarily substantially more difficult to establish." Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-61 (1992) (quotation omitted).

Finally, "three additional requirements are imposed upon a voluntary membership organization" which "seeks standing to sue on behalf of its members":

- The organization's members "must otherwise have standing to sue in their own right";

- The interests the organization seeks to protect or vindicate must be "germane to the organization's purpose"; and

12

- "neither the claim asserted nor the relief requested must require the participation of the association's individual members."

Region 8, 993 F.2d at 805 n.3 (citing Hunt v. Wash. Apple Advert. Comm'n, 432 U.S. 333, 343 (1977)).

In seeking to meet these requirements at the summary judgment stage, Sustainable Coast may no longer rest on the allegations in its complaint but must "set forth by affidavit or other evidence specific facts which for the purpose of summary judgment will be taken as true."  Id. at 806 (quoting Lujan, 504 U.S. at 560).

Here, the Corps argues that Sustainable Coast (1) has failed to show that either Grainey or the organization itself has suffered an injury in fact because they express only a "general interest in protecting Georgia's coastal resources"; and (2) has not shown that any injury suffered would be redressed by a favorable decision. Dkt. No. 70 at 12-14. The first argument fails because Sustainable Coast has shown that the Lumar Dock harms their aesthetic interests in the island. The second argument, however, has merit: construction of the dock is complete, the permit to build it has expired, and even an order setting aside the Letter of Permission could not properly result in the dock's removal here. Thus, even a favorable decision would not redress Sustainable Coast's injuries—and they lack standing as a result.

13

### a. Injury in Fact

In cases like this one, "environmental plaintiffs adequately allege injury in fact when they aver [that] they use the affected area and are persons for whom the aesthetic and recreational values of the area will be lessened by the challenged activity." Sierra Club v. Johnson, 436 F.3d 1269, 1279 (11th Cir. 2006) (quoting Friends of the Earth, 528 U.S. at 183); cf. Ouachita Watch League v. Jacobs, 463 F.3d 1163, 1171 (11th Cir. 2006) (applying this standard to find standing at summary judgment stage). Though "aesthetic interests" are naturally somewhat abstract, harming them can still be an injury because "[a]esthetic and environmental well-being, like economic well-being, are important ingredients of the quality of life in our society"; so it is enough that a project like the dock here could "destroy or otherwise adversely affect the scenery[ or] natural and historic objects and wildlife" and thus "impair the enjoyment of the [area]." Sierra Club v. Morton, 405 U.S. 727, 734 (1972). The Corps initially argued that Karen Grainey's interests in enjoying Cumberland Island were too vague and conclusory to establish an injury in fact. See Dkt. No. 70 at 20 (discussing dkt. no. 68-1). But the Corps does not renew that argument in its response brief to Sustainable Coast's motion or in its reply brief in support of its own, with good reason.

14

Recall that Sustainable Coast submitted a declaration from Carolyn Rader and an amended declaration from Grainey while the parties were briefing the cross-motions. See Dkt. Nos. 75 (Amended Grainey Declaration) and 76 (Rader Declaration). Those declarations effectively turn away the Corps' arguments. Rader's declaration attests that she visited Cumberland Island after the dock was built and was "shocked and appalled by it" because it "impair[s her] aesthetic enjoyment of [the] Island." Dkt. No. 76 ¶¶ 8-13. Along the same lines, Grainey's amended declaration describes "concrete plans" to visit the Island in September 2021 and confirms that the presence of the dock "diminishes [her] enjoyment of the island." Dkt. No. 75 ¶¶ 16-18; see also Dkt. No. 82-1 (supplemental declaration, confirming the September 2021 visit took place and that the dock "lessened [Grainey's] enjoyment" of the Island).[3]

---

[3] Two other injury-related arguments bear mention, albeit parenthetically.

To begin with, Grainey and Rader's declarations express concerns that the dock may be "unnecessarily contributing contaminants to the water and disrupting the natural flow of sediments." Dkt. No. 75 ¶ 14; Dkt. No. 76 ¶ 14. There is no support in the record for the assertion that the dock may harm the marshland, so those conclusory statements do not support Sustainable Coast's claim to standing. See Glynn Env't Coal., Inc. v. Sea Island Acquisition, LLC, No. CV 219-050, 2021 WL 313626, at *2 (S.D. Ga. Jan. 29, 2021) ("The mere possibility of pollution is not enough." (citing Ga. Republican Party v. SEC, 888 F.3d 1198 (11th Cir. 2018))).

Theses declarations demonstrate concrete injuries under well-established standards and set Sustainable Coast (and its members) apart from plaintiffs who assert only a vague desire to see and enjoy the assertedly diminished landscape. See Summers, 555 U.S. at 496; Lujan, 504 U.S. at 564. And because Sustainable Coast has "suffered an injury to a separate concrete interest," they have standing "to assert a procedural injury," Region 8, 993 F.2d at 810, namely, that they were deprived of an opportunity to object to granting Lumar permission to build the dock.

### b. Redressability

Sustainable Coast's claim to standing fails, however, at redressability. To show redressability, "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" Alcock, 993 F.2d at 805 (quoting Lujan, 504 U.S. at 561). Sustainable Coast cannot meet that burden.

First, any objection to the dock's construction became moot when the dock was completed and the permit to build it expired. Save the Bay, Inc. v. U.S. Army, 639 F.2d 1100, 1102 (5th Cir.

---

Next, the declarations complain about a "proposed ten-lot subdivision" for which Lumar obtained a "hardship variance from Camden County." Dkt. No. 75 ¶¶ 4, 10; Dkt. No. 76 ¶ 12. But even assuming the possibility of this subdivision is a separate injury, and even if the Court had not struck those submissions, see supra, it is not clear how that "injury" would be fairly traceable to the Corps—which has nothing to do with the approval of that subdivision—so it does not help Sustainable Coast's claim to standing. See Summers, 555 U.S. at 493.

1981) (because "construction of the railroad [was] completed . . . any injunctive relief to prohibit construction of the railroad [was] moot"); <u>Fla. Wildlife Fed'n v. Goldschmidt</u>, 611 F.2d 547, 548 (5th Cir. 1980) (same); <u>see also</u> <u>Friends of Tims Ford v. Tenn. Valley Auth.</u>, 585 F.3d 955, 970 (6th Cir. 2009) (finding that plaintiffs failed to meet their burden of demonstrating standing when they "only allege[d] direct harm from already-constructed community boat docks"); <u>Nat'l Parks Conservation Ass'n v. U.S. Army Corps of Eng'rs</u>, 574 F. Supp. 2d 1314, 1321 (S.D. Fla. 2008) (finding no remedy was available when the fill-permit was expired). It is undisputed here that the dock was completed before Sustainable Coast filed this lawsuit, dkt. no. 33 at 4-5 (citing dkt. no. 1 ¶ 23), and that the building permit expired in December 2020, dkt. no. 94-1 at 1.  The Court cannot enjoin completed construction, and there is no longer an active building permit to set aside.

Second, Sustainable Coast has not shown that the Court can redress the injuries to its aesthetic interests. Of course, the APA gives courts power to "set aside" agency actions that are "arbitrary and capricious" or "contrary to law." 5 U.S.C. § 706(2). But that power, alone, would do nothing to redress Sustainable Coast's injuries. While everyone agrees that the Letter of Permission necessarily encompasses some authorization for the

dock's presence and use on the Island, dkt. no. 94 at 3 n.2 (referencing 33 C.F.R. 325.6(b)); AR 11, merely obviating that authorization does not actually solve anything. If the Court set aside the Letter of Permission, the Corps *could* take enforcement action to have Lumar remove the dock, 33 C.F.R. §§ 325.7, 326.3, 326.5, but the Court cannot order it to do so. Dep't. of Homeland Sec. v. Regents of the Univ. of Cal., 140 S. Ct. 1891, 1906 (2020) (explaining the "well-established 'tradition' that 'an agency's decision not to prosecute or enforce' is 'generally committed to an agency's absolute discretion.'" (quoting Heckler v. Chaney, 470 U.S. 821, 831-32 (1985))). So, authorized or not, the dock will still be there—and it will still inflict all the aesthetic injuries Sustainable Coast alleges.

What about the possibility of directly ordering the dock torn down? See Dkt. No. 91 at 1 (supplemental briefing order). The parties' supplemental briefs ably debate that point, but the Corps has the better of the argument.[4] The Corps maintains—and it follows

---

[4] The Corps argues that Sustainable Coast did not ask for this sort of relief in its complaint, dkt. no. 94 at 4, but that seems a cramped reading. The prayer for relief asks this Court to "[s]et aside and vacate the Corps' Letter of Permission" and grant injunctive relief "to preserve Cumberland Island in its primitive state." Dkt. No. 48 ¶ 72. Sustainable Coast clearly contends that issuing the letter of permission, i.e., authorizing Lumar to build the dock, "violat[es]" the Seashore Act's Mandate to "preserve[ the Island] in its primitive state." Id. ¶ 24; see also id. ¶¶ 13, 26. So a fair reading of the complaint seems to embrace that relief, particularly in light of the fact that Sustainable Coast's

from the nature of the permitting scheme here—that Lumar, as the property owner, would be responsible for tearing the dock down. Dkt. No. 94 at 6. The Corps, after all, does not own the dock or the property it sits on, dkt. nos. 70-1 and 83 ¶¶ 3-4, and its authority over those things appears to extend only to authorizing the construction (and therefore presence) of the dock, see 33 U.S.C. § 403; 33 C.F.R. § 325.1 et seq. So the Corps cannot properly be ordered to tear the dock down—or, at least, Sustainable Coast has not offered any authority for the proposition that it can. And there's the rub: "it must be the effect of the court's judgment on the defendant—not an absent third party—that redresses the plaintiff's injury." Jacobson v. Fla. Sec'y of State, 974 F.3d 1236, 1254 (11th Cir. 2019) (quoting Lewis v. Governor of Ala., 944 F.3d 1287, 1301 (11th Cir. 2019)). The Court may not "simply assume that everyone (including those who are not proper parties to an action)," like Lumar, "will honor the legal rationales that underlie [its] decrees." Lewis, 944 F.3d at 1305 (quoting Franklin v. Massachusetts, 505 U.S. 788, 825 (1992) (Scalia, J., Concurring)).

Simply put, Sustainable Coast has not carried its burden to show that it has suffered a redressable injury. Any effort to halt

---

supplemental brief emphatically confirms it wants the dock torn down. See generally Dkt. No. 95.

the construction or set aside authorization to build is clearly moot, and even setting aside the Letter of Permission would not tear the dock down. Thus, the injuries Sustainable Coast claims are not redressable by a favorable decision in this case, and that dooms its claim to standing.  As a result, the Court lacks jurisdiction to decide whether the Letter of Permission violated the NEPA or the Seashore Act.

## CONCLUSION

The Corps' motion to strike extra-record evidence, dkt. no. 79, is **GRANTED**, the Corps' motion for summary judgment, dkt. no. 70, is **GRANTED**, and Sustainable Coast's motion for summary judgment, dkt. no. 68, is **DENIED**.  The Clerk is **DIRECTED** to enter judgment and **CLOSE** this case.

**SO ORDERED** this 21st day of January, 2022.

_____
HON. LISA GODBEY WOOD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA